# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:12-cr-00311-APG-PAL |
| Plaintiff, | **ORDER** |
| vs. | (Mtn to Sever - Dkt. #40) |
| RYAN WALTON, | |
| Defendant. | |

This matter is before the court on Defendant Ryan Walton's Motion to Sever Counts 1-3 from Counts 4-7 and Count 8 from All Other Counts for Trial (Dkt. #40). The court has considered the Motion, the government's Response in Opposition (Dkt. #44), Walton's Reply (Dkt. #46), and the arguments of counsel at a hearing conducted December 5, 2013.

## BACKGROUND

**I.　Procedural History.**

On August 28, 2012, a federal grand jury returned an Indictment (Dkt. #1) against Walton, charging him with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C §§ 922(g)(1) and 924(a)(2). Walton made an initial appearance on August 29, 2012, pled not guilty, was appointed counsel, and detained after a detention hearing. *See* Minutes of Proceedings (Dkt. #7); Order of Detention (Dkt. #13). On September 18, 2012, a federal grand jury returned a Superseding Indictment (Dkt. #15), charging Walton with three counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); three counts of possession of a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and two counts of use or possession of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. §§ 922(g)(1) and 924(c). Walton was arraigned on the Superseding Indictment on September 28, 2012,

and pled not guilty. *See* Minutes of Proceedings (Dkt. #18). Pretrial motions were due no later than November 28, 2012. *See* Order to Continue (Dkt. #21). Trial in this matter is set January 6, 2014. *See* Notice (Dkt. #45).

## II. Factual Allegations in the Superseding Indictment.

### A. Counts One through Three.

The conduct in Counts One through Three is alleged to have occurred on September 26, 2007. The parties do not dispute that on that date, officers executed a search warrant at 2045 Jade Hills Court related to an investigation of the residents of that address operating a "chop shop." During the search officers recovered an SKS rifle under a mattress in one of the bedrooms of the residence. Cocaine, plastic baggies, 9mm ammunition, and paperwork in the Defendant's name were also recovered from the same bedroom. Walton reportedly gave a voluntary statement after *Miranda* warnings were administered admitting that he was selling drugs and had been selling cocaine "off an on" since he was twelve years old. He also reportedly admitted that the rifle was his, and that he'd had it for about two years. As a result of this 2007 arrest, Walton was charged and convicted in Nevada state court for the offense related to operating a chop shop. He was not charged with any weapons or drug related charges resulting from this incident.

### B. Counts Four through Seven.

The conduct in Counts Four through Seven is alleged to have occurred on December 22, 2010. At that time, officers went to Walton's home to support a probation search. Officers found a purchase agreement for a 2000 Ford Crown Victoria in the name of Vernette Jones, Walton's sister. Ms. Jones also resided in the residence being searched. A Crown Victoria similar to the one described in the purchase agreement was found around the corner from the residence. The VIN number matched the VIN number on the purchase agreement. Ms. Jones stated she bought the car in California for Walton. When officers looked in the car, they saw: two large capacity magazines for firearms; the outline of what appeared to be a firearm in a bag; soft body armor; a box of ammunition; and what appeared to be a long barreled gun on the floor. A search warrant was obtained for the car, and officers recovered a Vulcan V-10 .45 caliber semi-automatic pistol; two soft body armor vests; two thirty-round extended magazines with ammunition; 74.5 grams of cocaine; 32.2 grams of marijuana; a Glock Model 19; a 9

mm Luger with extended magazine; and a wallet containing identification and/or credit cards in the names of Kelly Bedford, Frederick Bedford, and Thomas Wilridge. Walton was later found to have violated the terms of his parole.[1] No charges were filed concerning the weapons or drugs found in the vehicle.

### C. Count Eight.

The conduct in Count Eight is alleged to have occurred on August 8, 2012. On that date, officers conducted a "Terry stop" of Walton. Walton was followed by police while driving the 2000 Ford Crown Victoria. Walton parked the car and appeared to check an address. Police later saw the Crown Victoria parked on an adjacent street. Police allegedly observed Walton approach a house and then leave when he spotted the police. Officers stopped Walton a short distance from the Crown Victoria as he was walking down the street. One of the officers allegedly saw two handguns in plain view on the floor of the driver's side of the Crown Victoria. A search warrant was obtained and two weapons were recovered. (Walton's motion indicates he was arrested for driving without a license. The government's response indicates Walton was cited for driving without a license and arrested on state firearms offenses.) The two weapons recovered on August 8, 2012, were charged in the original single count federal indictment, which is now Count Eight of the Superseding Indictment.

## DISCUSSION

### I. The Parties' Positions.

Walton seeks an order pursuant to Rules 8 and 14 of the Federal Rules of Criminal Procedure severing the eight counts alleged in the Superceding Indictment into three separate groups for trial. Specifically, he seeks one trial of the charges arising out of the September 26, 2007 incident charged in Counts One through Three; a second trial of the counts arising out of the December 22, 2010 incident charged in Counts Four, Five, Six and Seven; and a third trial of the felon in possession of a firearm charged in Count Eight arising out of his arrest on August 8, 2012. Walton seeks relief from prejudicial joinder of these counts under Rule 14(a) of the Federal Rules of Criminal Procedure. Walton contends

---

[1] It is unclear whether Walton was on probation or parole in December 2010. The motion indicates this was a probation search. However, the motion also indicates that as a result of this search, Walton was found to have violated the terms of his parole.

3

that the evidence of offenses arising from three separate dates does not substantially overlap with any admissible evidence, and that the offenses are not part of the same, or a common scheme.

Walton acknowledges that the offenses charged, which are all transactions involving possession of guns, are of the same or similar character. However, he argues that Rule 14 allows the district court to order separate trials if joinder of the offenses "appears to prejudice a defendant." Additionally, Walton relies on *United States v. Nguyen*, 88 F.3d 812, 815 (9th Cir. 1996), to support his argument that joining Count Eight with the other charges in the Indictment will prejudice him because the jury might improperly consider the evidence of a prior conviction when deliberating about the other charges. The discovery produced by the government in this case indicates the government will rely on a theory of constructive possession of the firearms in all three groups of charges. Walton maintains that there is a "natural tension" between the Ninth Circuit's standard jury instruction defining "possession" for general purposes, and for purposes of a possession of a firearm charge. He also argues that allowing Count Eight to be joined with the other counts would allow evidence of other crimes to be introduced at trial which would otherwise be inadmissible. Specifically, Count Eight requires proof that Walton is a prohibited person which will require the government to introduce evidence of past crimes that would be otherwise inadmissible in a trial of the other counts. Evidence of a prior conviction is especially prejudicial where, as here, one of the prior convictions arose from the same facts and circumstances alleged in the first three counts of the Superceding Indictment.

The government responds that Walton's motion should be denied as untimely. On the merits, the government relies on a long line of cases holding that joinder of offenses promotes judicial economy, and that Rule 8(a) of the Federal Rules of Criminal Procedure is construed broadly in favor of initial joinder. In determining whether the counts against the Defendants are the "same acts" for purposes of Rule 8(a), the court should consider the elements of the statutory offense, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims. The government argues the charges are all properly joined under Rule 8 of the Federal Rules of Criminal Procedure because they are all of a similar character, that is, they all have the same statutory elements and demonstrate a similar modus operandi of carrying controlled substances in a vehicle. The government points out that the same

1 vehicle, the 2000 Ford Crown Victoria, is involved in the offenses charged in Counts Four, Five, Six, and Seven, and the offense charged in Count Eight.

The government also argues that Walton has only alleged a potential risk of prejudice and has not shown there is a serious risk of prejudice if all the charges are tried together. The trial court can limit any potential prejudice that would result from a joint trial of all of these charges by appropriate jury instructions. The government argues the *Nguyen* case is distinguishable because it involved a joint trial of two separate indictments charging the Defendant with conspiracy to transfer an unregistered shotgun with an obliterated serial number with a felon in possession of a firearm count charged in a second case, and that the Ninth Circuit held that a limiting instruction properly addressed potential prejudice caused by the joinder. The *Nguyen* court held that in determining whether a defendant has been prejudiced by the consolidation of a felon in possession charge with other, unrelated felony charges requires the court to examine the strength of the evidence against a defendant and the nature and efficacy of the methods employed to guard against prejudice. The government contends the evidence against Walton "is strong in each case, and the Defendant has not argued that the court would be unable to limit the jury's consideration of the charged in a way that would be substantially prejudicial to client."

Finally, the government argues severance would not serve judicial economy because evidence supporting each of the offenses would be admissible in a trial of the other offenses to prove Walton had possession, dominion, or control of the Crown Victoria in Counts Four through Eight. Additionally, the government would be able to introduce evidence of Walton's possession of firearms on each of the three different dates charged in the Superceding Indictment to show lack of mistake or accident under Rule 404(b) of the Federal Rules of Evidence.

**II.   Applicable Law.**

    **A.   Federal Rule of Criminal Procedure 8(a): Joinder.**

Rule 8 of the Federal Rules of Criminal Procedure permits joinder of offenses or defendants in the same criminal indictment. Rule 8(a) allows joinder of multiple offenses against a single defendant if the offenses are: (a) of the same or similar character; (b) based on the same act or transaction; or (c) connected with or constituting parts of a common scheme or plan. Fed. R. Crim. P. 8(a). Rule 8 has

been broadly construed in favor of joinder because joint trials conserve government funds, minimize inconvenience to witnesses and public authorities, and avoid delays in bringing a defendant to trial. *See United States v. Lane,* 474 U.S. 438, 449 (1986); *United States v. Jawara,* 474 F.3d 565, 572 (9th Cir. 2006) (citing *United States v. Friedman,* 445 F.2d 1076, 1082 (9th Cir. 1971)). Misjoinder of charges under Rule 8(a) is a question of law reviewed de novo. *Id.* (citing *United States v. Terry,* 911 F.2d 272, 276 (9th Cir. 1990)).

In the Ninth Circuit, a valid basis for joinder must be discernible from the face of the indictment. *See Jawara,* 474 F.3d at 572 (citing *Terry,* 911 F.2d at 276, and *United States v. VonWillie,* 59 F.3d 922, 929 (9th Cir. 1995)). The Ninth Circuit considers such factors as the elements of the statutory offenses, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims in assessing whether an indictment meets the "same or similar character" prong of Rule 8(a). *Id.*, at 578. Mere factual similarity between the events is not a sufficient basis for joinder. *United States v. Vasquez-Velasco*, 15 F.3d 833, 843 (9th Cir. 1994) (interpreting Rule 8(b), which governs joinder of two or more defendants in the same indictment). However, the term "transaction" is interpreted flexibly, and determining whether a "series" exists depends on whether there is a "logical relationship" between the transactions. *Id.* A logical relationship is typically shown by the existence of a common plan, scheme, or conspiracy. *Id.* at 844 (internal quotations and citations omitted). A logical relationship may also be shown if the common activity constitutes a substantial portion of the proof of the joined charges. *Id.* Because Rule 14 is available to remedy prejudice that may develop during trial, Rule 8 has been broadly construed in favor of initial joinder. *Jawara*, at 573 (internal quotations and citations omitted).

**B.     Federal Rule of Criminal Procedure 14: Severance.**

Rule 14 governs the severance of both defendants and charges. *Vasquez-Velasco,* 15 F.3d at 845. Even where joinder is proper under Rule 8(a) of the Federal Rules of Criminal Procedure, the court may order separate trials of counts or provide other relief that justice requires if joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). The court's power to order severance "rests within the broad discretion of the District Court as an aspect of its inherent right and

duty to manage its own calendar." *United States v. Gay*, 567 F.2d 916, 919 (9th Cir. 1978). A Rule 14 motion to sever must be renewed at the close of evidence or it is waived. *Jawara*, at 577 (citing *Terry*, 911 F.2d at 277). A motion to sever at the close of evidence allows the district court to assess whether joinder of offenses is prejudicial after the evidence is fully developed. *Id*.

Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion. *Zafiro v. United States,* 506 U.S. 534, 538-39 (1993). The court's denial of a motion to sever is reviewed for abuse of discretion. *See Fernandez*, 388 F.3d at 1241. "The test for determining abuse of discretion in denying severance under Rule 14 is whether a joint trial would be so prejudicial that the trial judge could exercise his discretion in only one way." *United States v. Escalante,* 637 F.2d 1197, 1201 (9th Cir.), *cert. denied,* 449 U.S. 856 (1980)).

The Ninth Circuit has held that Rule 14 sets a high standard for showing prejudice, and the party seeking severance bears the burden of showing clear, manifest, or undue prejudice of such a magnitude that, without severance, the party will be denied a fair trial. *See United States v. Throckmorton,* 87 F.3d 1069, 1072 (9th Cir. 1996); *Vasquez-Velasco,* 15 F.3d at 845. Prejudice arises where: (a) the jury could confuse and cumulate the evidence of one charge to another; (b) the defendant could be prejudicially confounded in presenting his defenses (i.e., where a defendant wishes to testify in his own defense on one count but not another); and (c) the jury could erroneously conclude the defendant is guilty on one charge and therefore convict him on another based on his criminal disposition. *United States v. Johnson,* 820 F.2d 1065, 1070 (9th Cir. 1987) (citing *Drew v. United States,* 331 F.2d 85, 88 (D.C. Cir. 1964). The Ninth Circuit evaluates prejudice to a defendant on a case-by-case basis to determine whether the trial court's refusal to sever was an abuse of discretion. *Vasquez-Velasco*, 15 F.3d at 844.

Severance may be required when proof of a prior conviction is required on some counts, but not others. *United States v. Lewis*, 787 F.2d 1318, 1321-23 (9th Cir.), amended by 798 F.2d. 1250 (9th Cir. 1986). The Ninth Circuit has recognized that when a defendant alleges prejudice due to the admission of "other bad acts" evidence, there is a high risk of undue prejudice. *Lewis*, 787 F.2d at 1322. However, reversal of a conviction is not required unless a defendant shows the failure to sever resulted in "clear, manifest, or undue prejudice." *Vasquez-Velasco*, 15 F.3d at 845-46; *United States v. Lopez*,

477 F.3d 1110, 1116 n.24 (9th Cir. 2007). A failure to sever is manifestly prejudicial if it is "of such magnitude that the defendant's right to a fair trial was abridged." *Lewis*, 787 F.2d at 1321.

In *United States v. Nguyen*, the Ninth Circuit recognized that all of the circuit courts agree that trying a felon in possession count with other felony charges "creates a very dangerous situation because the jury might improperly consider the evidence of a prior conviction when deliberating about the other felony charges." 88 F.3d 812, 815 (9th Cir. 1996). There is a risk that the defendant will be convicted because he is a "bad guy" or because the jury will conclude if he committed a crime before, he probably committed this one too. Severance of the counts, bifurcation of the trial to separate the felon in possession count from other counts, or a stipulation to the prior felony so that the jury does not hear about the prior bad act are approaches courts have taken to minimize the potential prejudice to a defendant. *Id*.

Cautionary jury instructions on the admissibility of evidence, and requirement to compartmentalize the evidence can minimize the risk of prejudice to a defendant, and, "juries are presumed to follow their instructions." *See, e.g., Zafiro,* 506 U.S. at 540 (citing *Richardson v. Marsh,* 480 U.S. 200, 209 (1987)); *see also Vasquez-Velasco,* 15 F.3d at 847 (collecting cases assessing joinder was prejudicial in light of jury instructions concerning compartmentalizing evidence and spillover prejudice). However, in *Nguyen*, the Ninth Circuit recognized that it is uncommon for cautionary jury instructions alone to sufficiently minimize prejudicial joinder of a felon in possession count with other counts. *Nguyen*, 88 F.3d at 815-16.

### III.  Analysis & Conclusion.

#### A.  Timing of the Motion.

The government is correct that the initial deadline for filing pretrial motions in this case was November 28, 2012. *See* Order to Continue (Dkt. #21). However, the parties subsequently stipulated to continue the calendar call and trial date of this case stating, "The additional time . . . [is] to allow counsel for the defendant sufficient time to effectively and thoroughly research, *prepare and file appropriate pretrial motions*, and prepare for trial." Order to Continue at ¶ 4 (Dkt. #29) (emphasis added). The next stipulation to continue the trial indicated it was to facilitate a potential plea deal between Walton and the government. *See* Order to Continue (Dkt. #39) at ¶ 4. The most recent

stipulation to continue provides that "[d]espite his counsel's urging him to either accept the government's offer, or unequivocally permit the filing of any motions, the Defendant did not do so. So it was that finally, on September 25, 2013, a Motion to Sever Counts (Dkt. #40), was filed on the Defendant's behalf." Order to Continue (Dkt. #43) at ¶ 2. The parties stipulated to continue to the calendar call and trial to allow the government "ample time of its own to consider the premises of any motion and respond accordingly." *Id.* at ¶ 3. It is clear the parties expected defense counsel would file one or more pretrial motions if the case was not negotiated. The Motion to Sever was filed when Walton declined to accept the government's offer, and the parties then stipulated to a further continuance to allow the government to respond. The court will therefore consider the Motion to Sever on the merits.

**B. Joinder of All Counts.**

The court finds that the offenses charged for three separate time periods in the indictment were properly joined under Rule 8(a) of the Federal Rules of Civil Procedure. Walton's written motion concedes that the offenses are of the same or similar character, and again conceded so in oral argument. They all involve the same crimes. The identical crimes are alleged in Counts One through Three, and Four through Seven. The Counts charged in One through Seven arise out of the same two transactions. *See, e.g., United States v. Rousseau,* 257 F.3d 925, 932 (9th Cir. 2001) (joinder proper because multiple felon-in-possession charges were offenses of the same or similar character). However, the face of the indictment does not show a relationship or nexus between the transactions charged in Counts One through Three, and Four through Seven, or any connection between Count Eight and the remaining counts.

Walton's reply argues that, although the offenses are of the same or similar character, numerous courts and commentators have questioned the logic and fairness of joinder. Additionally, joinder poses obvious dangers of prejudice to the Defendant, and if the offenses arise out of separate and unrelated transactions, a joint trial is unlikely to save time or money. The reply also points out that the underlying acts are separated by a period of five years which is more significant because the counts do not stem from common events. The government has not provided notice of intent to introduce evidence of other bad acts as required by Federal Rule of Evidence 404(b), and the government's response to the motion

to sever is insufficient to serve this purpose. However, even if the court determined that the evidence on certain counts was admissible in a trial of other counts, it would still be required to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Rule 403.

The government relies on two of the three prongs of Rule 8(a) to support its arguments that joinder of all of the counts charged in the indictment is appropriate. The government argues that all of the crimes charged in the indictment are of the same or similar character, and are connected with or constitute parts of a common scheme or plan. The government's opposition to the motion to sever relies heavily on the Ninth Circuit decision in *United States v. Jawara*. There, the Ninth Circuit examined these same two bases for joinder and found that two immigration offenses had been improperly joined under Rule 8(a). *Jawara* was charged and convicted of document fraud related to a personal asylum application and conspiracy to commit marriage fraud to avoid the immigration laws. The document fraud charge alleged that in December 2000, Jawara made false statements on an immigration and naturalization form. The marriage fraud conspiracy charge alleged that in November 2004, he and others conspired to enter into a sham marriage to evade the immigration laws. The government argued that both counts were properly joined because they both involved immigration fraud.

The Ninth Circuit rejected the government's arguments that the two offenses which occurred three-and-a-half years apart were part of a common scheme or plan because nothing on the face of the indictment suggested a nexus between the two counts. ("Aside from the subject matter of immigration, the Superseding Indictment does not offer a discernable link between the two offenses or suggest any overlapping evidence. No plan or common scheme links the charges, nor can any commonality be inferred from the indictment.") *Jawara*, 474 F.3d at 474. The face of the indictment did not establish a direct connection between the acts other than Jawara's participation in both events. Additionally, the Ninth Circuit found it significant that the alleged acts underlying the two offenses were not temporally connected and were separated by several years.

The *Jawara* court also rejected the government's arguments that the offenses charged in the indictment were of the same or similar character, acknowledging that it was a more difficult question

because both offenses related to immigration fraud and the same or similar character prong of Rule 8(a) "is the most amorphous and controversial of the three grounds for joinder." *Id.*, at 575. The decision clarified how courts should assess the propriety of joinder on the basis of the same or similar character prong of Rule 8(a) using its earlier decision in *Terry* as a "jumping off point." The court concluded that in assessing whether an indictment meets the "same or similar character" prong of Rule 8, courts should "consider factors such as the elements of the statutory offenses, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims." *Id.*, at 578.

       The court reiterated that the court applies the "indictment-only" standard in determining whether the offenses charged are of the same or similar character for purposes of joinder under Rule 8(a)– "the similar character of the joint offenses should be ascertainable–either readily apparent or reasonably inferred–from the face of the indictment." *Id*. Examining the face of the indictment, the court concluded that the two counts were not of the "same or similar character" because they involved two different statutory violations requiring proof of different elements, and the underlying acts alleged were separated by three-and-a half years. The lack of temporal connection was significant because the counts did not stem from common events. There was a lack of evidentiary overlap, and the face of the indictment did not indicate a similar mode of operation with respect to the two crimes. The first count involved lying about being in Sierra Leone on an asylum application which was vastly different from the second count which alleged Jawara facilitated or procured a meeting for prospective marriage candidates. The two counts did not involve related geographic locations or related victims of the fraud. The Ninth Circuit concluded that ultimately the only similarity between the two counts discernable from the indictment was that they both involved immigration and that such a vague and thematic connection could not, in and of itself, justify joinder. *Id.*, at 579.

       In this case, as in *Jawara*, the government crafted a bare-bones indictment. The superseding indictment alleges a series of offenses occurring on three different dates separated by nearly five years. Counts One through Three involve offenses which occurred on September 26, 2007. Walton is alleged to have possessed cocaine with intent to distribute while possessing a SKS rifle which he was prohibited from having as a convicted felon. The offenses charged in Counts Four through Seven

11

allege that on December 22, 2010, Walton possessed cocaine and marijuana with intent to distribute and was in possession of a .45 caliber semi-automatic pistol, a Glock Model 19, and a 9mm Luger semi-automatic handgun which he was prohibited from possessing as a convicted felon. Count Eight alleges that on August 12, 2012, Walton possessed two different Springfield Armory Model XD-9mm pistols which he was prohibited from possessing as a convicted felon. All three felon in possession charges involve the same two felony convictions. However, the indictment does not allege any of these three series of offenses grow out of related transactions or suggest a nexus between the offenses charged in 2007, 2010, and 2012. Like the indictment in *Jawara*, there is no direct connection between the offenses alleged in 2007, 2010, and 2012, other than Walton's alleged participation in all three series of offenses. As *Jawara* reiterated, mere thematic similarity is insufficient to support joinder.

Applying the *Jawara* factors, the court finds that it is not apparent from the face of the indictment that all of the offenses charged on three different dates are part of a "common scheme or plan." The underlying acts alleged in the indictment are separated by nearly five years. The offenses alleged in Counts One through Three, Four through Seven, and Count Eight, lack any temporal connection at all. The face of the indictment does not establish any evidentiary overlap. It does not specify the physical location of the acts, or identify the modus operandi of the crime. The face of the indictment has not alleged that these are related transactions. At most, what is discernable from the face of the indictment is that Walton is allegedly a two-time convicted felon who possessed different firearms on different dates while possessing drugs for purposes of distribution on two separate occasions. Mere thematic similarity between the 2007 offenses, the 2010 offenses, and the 2012 offense does not suffice.

Although Walton concedes initial joinder of the charges was appropriate under Rule 8(a) because all of the crimes are of the same or similar nature, he seeks a severance under Rule 14 arguing prejudicial joinder. Rule 14 gives the court discretion to sever the counts if joinder is so manifestly prejudicial that it outweighs the court's concern with judicial economy and threatens Walton's right to a fair trial. The motion to sever suggested that joinder of all these charges would be especially prejudicial where, as here, the 2007 felony conviction alleged in all three felon in possession counts arose out of the September 26, 2007 arrest charged in Counts One through Three. During oral argument, the court

inquired to clarify Walton's concern. Counsel for Walton, and counsel for the government agree that the 2007 conviction pled in all three felon in possession counts arose out of the September 26, 2007 arrest. Thus, Walton could not have been convicted of the 2007 state offense related to his operation of a "chop shop" charged in Counts One through Three of the indictment at the time of his arrest when the weapon and drugs were recovered. The court inquired of counsel for both sides whether they would agree to strike the reference to the 2007 conviction in Count One as surplusage under Rule 7(d) and both sides agreed.

Having reviewed and considered the moving and responsive papers and arguments of counsel, the court finds that joining the 2007 counts with the 2010 and 2012 counts is manifestly prejudicial to the Defendant, and that these counts should be severed. As indicated, the 2007 felony conviction would not be admissible in a trial of Counts One through Three, as the conviction was sustained as a result of the September 26, 2007 arrest. Walton did not have this conviction at the time of his arrest. Additionally, there is no overlap in the evidence. All three arrests involve different police officers and investigators. The 2007 arrest arose out of a search warrant executed at the residence Walton shared with his sister at 2045 Jade Hills Court in Las Vegas. The Viper Enforcement Detail of the Las Vegas Metropolitan Police Department was the investigating agency. The investigation arose out of information provided by a confidential informant that Walton was operating a "chop shop" at his residence. The evidence of the crimes Walten is charged with was recovered from a northeast bedroom of the residence. A small amount of cocaine was recovered along with plastic baggies and paperwork in the name of Walton and his alias, Ryan McLemore. The SKS rifle charged in Count Three was found under the mattress in the bedroom. Walton allegedly gave post-*Miranda* statements admitting the rifle was his, that he had had it for about two years, and that he had sold drugs and cocaine "off and on" since he was twelve years old.

The arrest involved in the offenses charged in Counts Four through Seven occurred more than three years later. It arose out of an investigation conducted by the Gang Crimes Bureau of the Las Vegas Metropolitan Police Department. Different officers were involved in the investigation and arrest. Officers went to Walton's residence at 2045 Jade Hills Court to support a probation search. During the probation search of Walton's bedroom, his probation officer found a vehicle purchase agreement

belonging to a 2000 Crown Victoria in the name of Vernette Jones, Walton's sister. The vehicle was located down the block. Both of Walton's sisters allegedly gave statements to the police indicating that the vehicle was purchased for Walton, and that he was the only one who had been driving it. Officers allegedly saw firearms and ammunition in plain view in the vehicle and applied for a search warrant. Officers recovered the cocaine, marijuana, and weapons charged in Counts Four through Seven while executing the search warrant for the vehicle.

The weapons charged in Count Eight of the indictment were also recovered from the same 2000 Ford Crown Victoria automobile. The arrest arose out of an investigation by officers of the North Las Vegas Police Department who conducted a *Terry* stop of Walton. Two officers allegedly saw Walton driving the Crown Victoria and observed other suspicious conduct which resulted in the stop after Walton parked the car. Walton reportedly did not have a driver's license and a records check indicated his Nevada driver's license was suspended. The records check also revealed Walton was a two-time registered felon for possession of cocaine and possession of stolen vehicle and that he had other priors. Walton allegedly claimed the vehicle belonged to his mother, Georgia McLemore. The officers reportedly advised Walton that a citation for driving while license suspended would be issued and the vehicle towed. One of the officers allegedly walked up to the vehicle and saw two semi-automatic firearms laying on the driver's floor board in plain view. The two Springfield Armory 9mm pistols recovered from the Crown Victoria on August 8, 2012, are the weapons charged in Count Eight of the indictment.

There is substantial overlap in the evidence of the offenses charge in Counts Three through Seven and Count Eight. In both cases, the evidence was recovered from the same Crown Victoria. In both cases, the government will have common witnesses that the vehicle belonged to Walton. Both series of counts involve the same two felony convictions. The court therefore concludes that joinder of Counts Four through Seven and Count Eight is not so manifestly prejudicial to Walton that it outweighs the court's need for judicial economy. Appropriate cautionary instructions can adequately address the need to consider the charges separately and compartmentalize the evidence. Additionally, during oral argument, counsel for both sides agreed that stipulating to Walton's prior felony convictions would

///

minimize potential prejudice of introducing evidence of other bad acts, and both sides agreed to stipulate.

## CONCLUSION

A joint trial of these eight offenses would be more efficient, and conserve judicial resources. However, these three sets of charges are not temporally connected and involve a span of nearly five years. Walton had not sustained the 2007 conviction referred to in Count One of the indictment at the time of the September 26, 2007 arrest which form the basis for Counts One through Three. Thus, evidence of the 2007 conviction is not admissible in a trial of Counts One through Three, but would be admissible in a joint trial. Additionally, Walton allegedly made incriminating statements to police at the time of the September 26, 2007 arrest admitting that the rifle under the mattress was his, along with other items recovered from the bedroom. He also reportedly admitted that he had been selling drugs and cocaine "off an on" since he was twelve years old. He did not make similar incriminating statements in the other two arrests. The court concludes that joining Counts One through Seven with the remaining counts is so manifestly prejudicial that it would threaten Walton's right to a fair trial. Accordingly,

**IT IS ORDERED:**

1. Walton's Motion to Sever (Dkt. #40) Counts One through Three, from Count Four through Seven, and Count Eight from all other counts for trial is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** to the extent that Counts One through Three are severed from the remaining counts.
2. Reference to the 2007 state court conviction in Count One of the Superseding Indictment is **STRICKEN** as prejudicial surplusage pursuant to Federal Rule of Criminal Procedure 7(d) as it is undisputed Walton did not have this conviction at the time of his September 26, 2007 arrest.

Dated this 6th day of December, 2013.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE